# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 10-1073

_____

Martin E. Cooper, III,      *
                                    *

        Plaintiff - Appellee,   *

                                    *   Appeal from the United States

     v.                         *   District Court for the

                                    *   Eastern District of Arkansas

Thomas Martin, Individually & in   *
Official Capacity as Investigator, et al.   *

                                    *

        Defendants - Appellants.   *

_____

Submitted:  December 14, 2010
Filed:  February 11, 2011

_____

Before RILEY, Chief Judge, BEAM, and BENTON, Circuit Judges.

_____

BENTON, Circuit Judge.

Martin E. Cooper III sued Thomas Martin, individually, and in his official capacity as chief investigator for Crittenden County Sheriff Richard E. Busby (also sued in his official capacity), and Crittenden County, Arkansas (collectively the "defendants"). Cooper seeks relief under 42 U.S.C. § 1983, the Arkansas Civil Rights Act (the "ACRA"), and Arkansas tort law. The district court denied defendants' motion for summary judgment. *Cooper v. Martin*, No. 3:09CV00006, 2010 WL 29598, at *4 (E.D. Ark. Jan. 4, 2010). The defendants appeal the denial of qualified

immunity to investigator Martin and the denial of summary judgment on Cooper's § 1983 claims. This court reverses in part and remands for further proceedings.

I.

The facts are summarized in the light most favorable to Cooper, the non-movant. *See Walker v. City of Pine Bluff*, 414 F.3d 989, 991 (8th Cir. 2005).

Cooper and two friends had a roadside encounter with Charles Williams in Crittenden County. Williams threatened to kill them. Cooper did not strike Williams, although one of the friends, Jeffrey McGee, did.

When investigator Martin interviewed Williams about the fight, he could not recall how many people were involved, or who, or how many, hit him. Although Williams told Martin he had consumed "several beers" the night of the fight, Martin did not interview the paramedics who treated him at the scene. Williams later told Martin that, according to his nephew, Cooper and Bradley Gill were at the scene of the fight.

Martin contacted Cooper's father about bringing in Cooper (then a minor) for a statement. Cooper's father called Martin the next day, saying that Cooper wanted to give his side of the story, that he had not touched Williams during the fight. The Coopers later met Martin by chance at a gas station, where Martin joked with Cooper about the fight and told him he had nothing to worry about. Cooper offered at that time to give a statement. Cooper's counsel contacted Martin about setting up a meeting with his client. Cooper's father also called Martin many times to set up a meeting. Despite these efforts, Martin did not meet with them. Martin never spoke with any of Cooper's friends, either.

The victim Williams swore to affidavits for the arrests of Cooper, McGee, and Gill on charges of both first- and second-degree battery. Martin stopped investigating,

gave the prosecutor Williams's affidavits, and told the prosecutor that "I was not having any cooperation [from the suspects]." The prosecutor gave his approval for Martin to apply for arrest warrants. Martin's warrant application included his case file and Williams's affidavits (materials that are not in the record on appeal). Martin did not swear to any facts in support of the warrant application, or speak with the state judge about its contents. The judge issued arrest warrants for Cooper, McGee, and Gill. Martin refused to meet with Cooper after the arrest warrants were issued. The charges eventually were nolle prossed.

Cooper sued alleging violations of 42 U.S.C § 1983, the ACRA, and the tort of outrage. The district court denied qualified immunity to Martin, and defendants' motion for summary judgment in its entirety. The defendants appeal the denial of qualified immunity to Martin and the denial of summary judgment on Cooper's § 1983 claims.

## II.

The defendants argue that the district court should have granted qualified immunity to Martin. "[A]n order denying qualified immunity is immediately appealable even though it is interlocutory." *Scott v. Harris*, 550 U.S. 372, 376 n.2 (2007). "'A defendant, entitled to invoke a qualified immunity defense, may not appeal a district court's summary judgment order insofar as that order determines whether or not the pretrial record sets forth a genuine issue of fact for trial'; the appealable issue is a purely legal one." *White v. McKinley*, 519 F.3d 806, 812 (8th Cir. 2008), *quoting Johnson v. Jones*, 515 U.S. 304, 319-20 (1995).

This court reviews de novo the district court's denial of qualified immunity. *Id.* at 813. The defendants bear the burden of establishing the relevant facts supporting qualified immunity, while Cooper receives the benefit of all reasonable inferences. *See Wallingford v. Olson*, 592 F.3d 888, 892 (8th Cir. 2010). Cooper

"may not rest upon the mere allegation or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial," and "must present affirmative evidence in order to defeat a properly supported motion for summary judgment." **Anderson v. Liberty Lobby, Inc.**, 477 U.S. 242, 256, 257 (1986), *citing* Fed. R. Civ. P. 56(e).

"Qualified immunity protects public officials from damage actions if their conduct did not violate clearly established rights of which a reasonable person would have known." **Morris v. Lanpher**, 563 F.3d 399, 402 (8th Cir.), *cert. denied* ___ U.S. ___, 130 S. Ct. 472 (2009), *citing* **Harlow v. Fitzgerald**, 457 U.S. 800, 818 (1982).

## A.

A police officer applying for an arrest warrant is not entitled to qualified immunity from a § 1983 suit if "'a reasonably well-trained officer in [the officer's] position would have known that [the officer's] affidavit failed to establish probable cause and that [the officer] should not have applied for the warrant.'" **Burk v. Beene**, 948 F.2d 489, 494 (8th Cir. 1991), *quoting* **Malley v. Briggs**, 475 U.S. 335, 345 (1986). In this case, Martin did not deliver his own affidavit, but rather forwarded Williams's affidavits to the prosecutor and judge. This court has not extended *Malley* liability to a non-affiant officer like Martin, compare *Michalik v. Hermann*, 422 F.3d 252, 261 (5th Cir. 2005), and need not address that issue here. Because Cooper rested on the mere allegations in his pleadings and did not present affirmative evidence (such as the affidavits or any other materials that Martin submitted to the judge), the record does not show whether Martin should have known that material information in Williams's affidavits was false.

## B.

The district court found a disputed fact whether Martin "told the judge that the suspects were not cooperating with the investigation." Generally, this court lacks

jurisdiction to review such determinations on interlocutory appeal. *See Johnson*, 515 U.S. at 319-20. However, "'[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment.'" *Wallingford*, 592 F.3d at 892, *quoting Scott*, 550 U.S. at 380.

In *Wallingford* and *Scott*, the district courts denied qualified immunity to police officers on § 1983 claims of excessive force. Both decisions were reversed because videotapes showed, contrary to the district courts' findings, that "no reasonable jury could have believed the plaintiff's claims." *Id.* (internal quotation omitted). Cooper does not assert that Martin told the state judge that he was not cooperating with the investigation. As Cooper's counsel stated at oral argument, no evidence in the record supports the district court's finding of a disputed fact as to whether Martin had a conversation with the judge. The district court found a disputed fact where none exists. This court accordingly does not adopt this "fact" in ruling on qualified immunity. *Id.* In sum, no facts here indicate that Martin misled the judge who issued the arrest warrants.

C.

The district court's other findings of disputed fact involve the quality of Martin's investigation. To establish a constitutional violation based on inadequate investigation, Cooper must show that Martin's "failure to investigate was intentional or reckless, thereby shocking the conscience. Negligent failure to investigate does not violate due process." *Brockinton v. City of Sherwood, Ark.*, 503 F.3d 667, 672 (8th Cir. 2007) (citations omitted).

The plaintiff in *Brockinton* was arrested for stealing a boat that he kept as security on a debt owed by Pamela Murphy's late husband. *Id.* at 670. Defendant

deputy Randy Gurley filed the theft report without verifying who owned the boat, even though he had previously arrested Murphy for crimes of dishonesty. *Id.* This court affirmed qualified immunity for Gurley, finding that his investigation did not "rise to the level of recklessness that shocks the conscience." *Id.* at 672.

Another defendant, detective John Scott, did not investigate the involvement of the plaintiff's alleged accomplice or verify the ownership of the boat before seeking and executing search and arrest warrants for Brockinton. *See id.* at 670-71. After Scott left an arrest warrant on his door, Brockinton contacted him to explain that he legally possessed the boat long before the alleged theft. *Id.* at 671. Scott refused to investigate further, even after the alleged accomplice also contacted him. *Id.* This court affirmed qualified immunity for Scott, finding: "While in hindsight Scott's investigation was not comprehensive, Brockinton has not alleged sufficient facts to show a constitutional violation." *Id.* at 675.

Martin failed to interview any of the suspects, joked with Cooper that there was nothing to worry about, credited the intoxicated victim's sworn account of the attack over Cooper's father's account, and misrepresented (to the prosecutor) the suspects' lack of cooperation. Assuming these facts to be true, Martin conducted a negligent investigation, but, under *Brockinton*, the facts "do not rise to the level of recklessness that shocks the conscience." *Id.* at 672.

Cooper has not established that Martin's investigation violated a constitutional right. This court reverses the district court's denial of qualified immunity to Martin, and dismisses Cooper's § 1983 claim against Martin in his individual capacity.

III.

The defendants argue that this court has pendent appellate jurisdiction to dismiss the § 1983 claims against the official-capacity defendants because those

claims are inextricably intertwined with the consideration of Martin's qualified immunity. *See **Lockridge v. Bd. of Trustees of University of Ark.***, 315 F.3d 1005, 1012-13 (8th Cir. 2003) (en banc). "An issue is inextricably intertwined with properly presented issues only when the appellate resolution of the collateral appeal necessarily resolves the pendent claims as well." ***Id.*** at 1012 (internal quotation marks omitted).

"[I]n order for municipal liability to attach, individual liability must first be found on an underlying substantive claim." ***Brockinton***, 503 F.3d at 674 (internal quotation marks omitted). Martin's qualified immunity therefore is inextricably intertwined with the liability of the official-capacity defendants. Because Martin is entitled to qualified immunity, the official-capacity defendants cannot be subject to § 1983 liability.[1] ***Id.***

\* \* \* \* \* \* \*

This court reverses the district court's denial of qualified immunity to Martin and the denial of summary judgment on Cooper's § 1983 claims against all defendants, and remands for further proceedings consistent with this opinion.

_____

_____

[1]The defendants do not raise on appeal the denial of summary judgment on Cooper's state claims.