# United States Court of Appeals
### For the Eighth Circuit

———————————————

No. 16-4141

———————————————

John Morrison Raines, III, as Guardian of the Estate of John Morrison Raines IV

*Plaintiff - Appellee*

v.

Counseling Associates, Inc.; Janet Stannard, MD; Lauren Gates, MGR; Richard Moore, EdD; Lou Strain, LPE; Mental Health Risk Retention Group, Inc; Conway Regional Medical System, Inc.; Continental Casualty Company; Rodger D. Langster, MD

*Defendant*s

Andrew Burningham, Conway Police Officer; James Burroughs, Conway Police Officer; Steven Culliford, Conway Police Officer

*Defendants - Appellants*

John & Jane Does, I-X; City of Conway, Arkansas; Scottsdale Insurance Company

*Defendant*s

———————————

Appeal from United States District Court
for the Eastern District of Arkansas - Little Rock

———————————

Submitted: December 14, 2017
Filed: March 5, 2018

———————————

Before SMITH, Chief Judge, KELLY and ERICKSON, Circuit Judges.
_____

ERICKSON, Circuit Judge.

In response to an emergency call from a male reporting he had been stabbed inside his apartment and was hiding in the closet, police officers located John Raines IV ("Raines") standing outside on the sidewalk of the apartment building holding a knife. During the encounter with Raines, which lasted less than two minutes, the officers shot at Raines twenty-one times. Raines is paralyzed from the waist down as a result of the encounter.

John "Jack" Morrison Raines III brought this action in his capacity as guardian of Raines's estate. The claims are against three police officers claiming unreasonable seizure and against the City of Conway, Arkansas, under 28 U.S.C. § 1983 for failure to train the officers on how to interact with a mentally ill person; for negligence, gross negligence, and willful and wanton conduct; and for violations of due process and the right to be free from cruel and unusual punishment under the Arkansas Civil Rights Act. The defendants moved for summary judgment. The district court[1] denied the motion on all claims except for the negligence and cruel and unusual punishment claims. The officers appeal the denial of summary judgment based on qualified immunity. We dismiss the appeal for lack of jurisdiction.

I.    BACKGROUND

On March 10, 2013, police responded to an apartment complex in Conway, Arkansas following a report of a stabbing victim hiding inside a closet and a robbery

_____

[1]The Honorable James M. Moody, Jr., United States District Judge for the District of Minnesota.

-2-

in progress inside the apartment. Officer Andrew Burningham was first to arrive on scene. He approached Raines, who was standing outside on the sidewalk by the apartment building with a knife in his hand. Officer Burningham ordered Raines to drop the knife and then he drew his handgun. Raines began saying "fine, fine, fine" and raised the knife to just above his shoulder level, waving it back and forth. Approximately 20 seconds later, Officers Steven Culliford and James Burroughs arrived at the scene. They drew their handguns and repeatedly directed Raines to "Drop the knife!" Additional officers arrived on scene and formed a semi-circle around Raines with their guns drawn. Raines continued waving the knife and shifting his weight from foot to foot on the sidewalk. Officers Culliford and Burroughs told Raines that he would be shot if he came towards them.

When Officer Rachel Hanson arrived on the scene, she pointed her handgun at Raines and instructed him to "Drop the knife!" She then re-holstered her weapon, drew her taser, and moved towards Raines. Detective Jason Cameron, with his gun drawn, positioned himself directly behind Officer Hanson in order to provide protection and "cover" to Officer Hanson. The taser video camera confirmed that at some point during Officer Hanson's approach towards Raines, Officers Burningham, Culliford, and Burroughs began firing their weapons at Raines. Detective Cameron did not fire his weapon. In total, officers fired twenty-one shots. Raines was struck four times – in the left arm, left face, left chest, and mid-back. As a result of the encounter, Raines is paralyzed from the waist down.

Officers Burningham, Burroughs, and Culliford moved for summary judgment on the Fourth Amendment unreasonable seizure claim, arguing that their use of deadly force against Raines was legally justified. In support of their argument that Raines made an aggressive movement towards Officer Hanson while holding the knife, the officers relied on deposition testimony from those at the scene as well as two videos, one taken from a police vehicle dashboard camera and one taken from the taser video camera. Raines contended that the videos contradict the officers' version

of events and that there remained a question as to whether Raines posed a threat when he was shot by the officers.

After studying the videos and considering the other evidence presented by the parties, the district court held that Raines raised a genuine dispute as to whether the officers had probable cause to suspect that Raines posed a significant threat of death or serious physical injury to others. Accordingly, the district court denied summary judgment on the issue of qualified immunity. This interlocutory appeal followed.

## II.    DISCUSSION

This Court reviews *de novo* the denial of qualified immunity. Rush v. Perryman, 579 F.3d 908, 912 (8th Cir. 2009) (citing Duckworth v. St. Louis Metro. Police Dep't, 491 F.3d 401, 405 (8th Cir. 2007)). "[W]e will affirm if 'there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" Estate of Morgan v. Cook, 686 F.3d 494, 496 (8th Cir. 2012) (quoting Fed. R. Civ. P. 56(a)). "In determining whether an officer is entitled to qualified immunity, we ask (1) 'whether, taking the facts in the light most favorable to the injured party, the alleged facts demonstrate that the official's conduct violated a constitutional right'; and (2) whether the asserted constitutional right is clearly established." Lee v. Driscoll, 871 F.3d 581, 584 (8th Cir. 2017) (quoting Wallingford v. Olson, 592 F.3d 888, 892 (8th Cir. 2010)).

Although an order denying qualified immunity is immediately appealable, "our interlocutory jurisdiction is limited." Mallak v. City of Baxter, 823 F.3d 441, 445-46 (8th Cir. 2016) (citing Cooper v. Martin, 634 F.3d 477, 479-80 (8th Cir. 2011) and Johnson v. Jones, 515 U.S. 304, 319-20 (1995)). "[W]e have authority to decide the purely legal issue of whether the facts alleged by the plaintiff are a violation of clearly established law." Franklin ex rel. Franklin v. Peterson, 878 F.3d 631, 635 (8th Cir. 2017) (citations omitted). We do not have jurisdiction over an interlocutory appeal

from a district court's denial of summary judgment based on qualified immunity when the denial is premised on a determination that "the pretrial record sets forth a 'genuine' issue of fact for trial." Mallak, 823 F.3d at 446 (quoting Johnson, 515 U.S. at 319-20). An exception lies "where the record plainly forecloses the district court's finding of a material factual dispute." Mallak, 823 F.3d at 446.

The initial inquiry is whether the officers' shooting of Raines amounted to a Fourth Amendment violation. Estate of Morgan, 686 F.3d at 496. In making this determination, we have said:

> The reasonableness of an officer's use of force is evaluated by looking at the totality of the circumstances, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade by flight. The use of deadly force is not constitutionally unreasonable if an officer has probable cause to believe that the suspect poses a threat of serious physical harm, either to the officer or others.

Id. (quotations and citations omitted). "But where a person 'poses no immediate threat to the officer and no threat to others,' deadly force is not justified." Ellison v. Lesher, 796 F.3d 910, 916 (8th Cir. 2015) (quoting Tennessee v. Garner, 471 U.S. 1, 11 (1985)).

The officers testified that they all believed Raines aggressively advanced on Officer Hanson just prior to the shots being fired. The defendants contend that their testimony is supported by the taser video when played in slow motion. Raines counters that the video evidence demonstrates that he was continuing to exhibit the same movements as he had done during the minute before he was shot. Unlike in Scott v. Harris, 550 U.S. 372, 379-80 (2007), where irrefutable video evidence resolved any factual disputes regarding the parties' conduct, the video evidence in

this case is inconclusive as to whether or not Raines advanced on the officers in a manner that posed a threat of serious physical harm to an officer.

Whether the officers reasonably believed Raines posed a sufficient threat depends on what occurred. The district court was unable to make this determination based on the evidence presented. Having reviewed the evidence in the record, we conclude that there is a key factual question in this case about whether Raines advanced on Officer Hanson just before being shot, which is both material and disputed, that precludes us from resolving the legal issue of whether the officers' conduct constitutes a violation of clearly established law.

While we have jurisdiction to determine whether conduct constitutes a violation of clearly established law, "we lack jurisdiction to determine whether the evidence could support a finding that particular conduct occurred at all." Franklin, 878 F.3d at 638 (citing Behrens v. Pelletier, 516 U.S. 299, 313 (1996) and Johnson, 515 U.S. at 313-18). Accordingly, the court's determination on the issue of qualified immunity was not a final decision. Franklin, 878 F.3d at 638 (citing Johnson, 515 U.S. at 313).

## III.  CONCLUSION

The appeal is dismissed for lack of jurisdiction.

_____

-6-